FILED

MAR 0 2 2010

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KOFI KYEI,

                                                                          Case No. CV 07-1607-AC

                              Plaintiff,                                  OPINION AND ORDER

              v.

OREGON DEPARTMENT OF
TRANSPORTATION,

                              Defendant.


*Opinion*

The jury returned a verdict against plaintiff Kofi Kyei ("Kyei") and in favor of defendant

Oregon Department of Transportation ("ODOT") on Kyei's discrimination, hostile work

environment, and retaliation claims based on race and national origin under Title VII. Kyei moves

for a new trial of his claims, arguing that a new trial is warranted because the court erred in

exercising its discretion to seek an advisory verdict from the jury on the issue of Kyei's past and

future economic loss. Kyei argues that allowing the jury to hear evidence related to his economic

OPINION AND ORDER                         1

damages unfairly prejudiced his Title VII claims because it allowed the jury to misuse that evidence by considering it when deciding liability under Title VII.

Kyei's motion is denied. The evidence he challenges as character evidence was not character evidence. Further, even assuming the challenged evidence meets the definition of character evidence under Federal Rule of Evidence 404, Kyei has not demonstrated that admission of that evidence substantially prejudiced him in the context of all the evidence produced at trial.

*Background*

Kyei is a black man born in Ghana.[1]  He worked for ODOT from March 2002 until May 2006, when ODOT terminated his employment as the final step in a series of disciplinary actions for unacceptable job performance. In October 2007, Kyei filed a discrimination lawsuit against ODOT and other defendants under federal and state law. As a result of the court's summary judgment ruling and Kyei's voluntary dismissals, all defendants except ODOT and some of Kyei's claims, including all of his state law claims, were dismissed from this action. Kyei's Title VII discrimination, hostile work environment, and retaliation claims against ODOT remained for trial.

Two days before the trial date, Kyei filed a supplemental trial brief in which he stated that he would not pursue at trial his claim for emotional distress damages. Kyei also asked the court to not take evidence of economic damages in the presence of the jury, although he acknowledged that the court had the discretion to "submit questions of back pay and front pay to the jury for advisory findings pursuant to Fed. R. Civ. P. 39(c)." (Pl.'s Supp. Trial Br. at 3.)  At the pretrial conference, the court told counsel that it would seek an advisory verdict on Kyei's claim for past and future wage loss and that it would hear evidence relevant to that claim in the jury's presence. On the morning

---

[1]  Kyei is pronounced "shay".

OPINION AND ORDER                    2

of trial and before jury selection began, in response to Kyei's request in his Supplemental Trial Brief, the court reaffirmed its ruling on this issue.

At trial, Kyei testified that he believed his post-termination job search efforts were unsuccessful because ODOT gave bad references about him to prospective employers who contacted ODOT about him. Kyei testified that he had applied for over one thousand jobs in the four years following his termination and had received numerous interviews, and that in many instances he had progressed to the final round. After the reference checks, however, he received no offers of employment. Kyei testified that the only job he had been able to secure was as a part-time school bus driver. On cross-examination, Kyei acknowledged that he listed ODOT on his employment applications but without also listing the reasons for his termination; he testified that he explained the reasons at the interviews.

The court's pretrial evidentiary rulings precluded ODOT from offering exhibits at trial to support its theory that the specific performance problems Kyei experienced at ODOT were virtually identical to the performance problems his prior employers had identified. The court did allow ODOT to introduce two exhibits pertaining to Kyei's past job with the State of Oregon's Housing and Community Services Department ("HCSD"), which exhibits ODOT offered to refute Kyei's argument that ODOT was the only source of potentially negative job references. The first, Exhibit 210, was a January 16, 2002, letter to Kyei from two human resources managers at HCSD. Most of Exhibit 210's content had been redacted to comply with the court's pretrial evidentiary rulings precluding descriptions of Kyei's specific performance issues at HCSD and of his various discussions with his managers and HR staff regarding those performance issues. What remained of the letter advised Kyei that HCSD was terminating his trial service employment and explaining to

OPINION AND ORDER                    3

him the process for winding-up his current projects. The unredacted portion of the letter also included the following:

> This decision to end your employment does not mean that you do not have the knowledge and the ability to be successful. It is a simple case of being honest about the fact that the background and experience you bring to the position is not a good match for the responsibilities of the position.

The second, Exhibit 211, was a February 21, 2002, letter from the director of HCSD to Kyei advising him that the decision to terminate his trial service employment was final. The letter reiterated to Kyei that HCSD had determined that his "background and experience did not align with the duties and responsibilities of the position." During cross-examination, Kyei also acknowledged that his trial service employment with Washington County had been terminated but no questions regarding his performance there were asked.

Presentation of evidence at trial lasted four days. The great bulk of testimony and virtually all of the exhibits pertained to Kyei's performance at ODOT and ODOT's continual efforts to address and correct Kyei's performance issues. Kyei contended that he performed his job duties well and that only because of discriminatory animus did ODOT find his performance deficient and terminate his employment. Kyei's case consisted mostly of his own testimony, supplemented by brief testimony of a former ODOT co-worker regarding a specific incident, and the testimony of his former supervisor and the ODOT human resources manager who advised his supervisor regarding Kyei's performance issues. ODOT presented a number of witnesses who described, and numerous exhibits that documented, issues regarding Kyei's performance of his job duties, his refusal to take direction from his supervisors, and actions he took that often alienated representatives of other governmental agencies with which he was expected to work in carrying out his ODOT job duties. The human resources manager also testified that following his termination she had received only one

OPINION AND ORDER                    4

reference check for Kyei, which had come from the school district considering him for the school bus driver position.

*Standards*

Under Federal Rule of Civil Procedure 59(a)(1), the court may grant a new trial on all or some of the issues tried to a jury "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020, 1035 (9th Cir. 2003). Rather, the court is "bound by those grounds that have been historically recognized." *Id.* Historically recognized grounds include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940).

A new trial is warranted on the basis of an incorrect evidentiary ruling only "if the ruling substantially prejudiced a party." *United States v. 99.66 Acres of Land,* 970 F.2d 651, 658 (9th Cir. 1992). Harmless error in an evidentiary ruling does not justify a new trial. *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1439 (9th Cir. 1990). In order to establish reversible error, the complaining party must establish that the error was prejudicial, which means that the trial court's error more probably than not tainted the jury's verdict. *Engquist,* 478 F.3d at 1009. A district court's evidentiary rulings are subject to the abuse of discretion standard. *Engquist v. Or. Dep't of Agric.,* 478 F.3d 985, 1008 (9th Cir. 2007), *aff'd,* 128 S. Ct. 2146 (2008).

The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510

OPINION AND ORDER                    5

n.15 (9th Cir. 2000). This is true even if a verdict is otherwise supported by substantial evidence. *Silver Sage Partners Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 819 (9th Cir. 2001). "Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has 'the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M. J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citations omitted).

*Discussion*

Under FRCP 39(c)(1), in an action not triable by right to a jury the court may "try any issue with an advisory jury[.]" Kyei acknowledges that the rule gives the court discretion to seek an advisory verdict and he does not directly challenge the court's decision to seek an advisory verdict on the question of his back and front pay. Rather, he contends the court erred in making an evidentiary ruling related to this issue: allowing ODOT to introduce character evidence in the form of his performance in jobs prior to his ODOT employment. This, Kyei contends, allowed the jury to misuse that evidence by considering it when determining liability on his Title VII claims. Kyei claims this ruling unfairly prejudiced him and warrants a new trial.

As an initial matter, the court addresses an apparent premise of Kyei's argument: that it is automatic error or unduly prejudicial by definition to ask a jury tasked only with making a liability finding to also render an advisory verdict on an issue to be decided by the court, because it allows the jury to consider evidence not relevant to determining Title VII liability. (Pl.'s Mem. in Support of Mo. for New Trial ("Memo") at 3.) Kyei cites no authority for this implied premise, which is contrary to Rule 39(c)(1)'s express authorization for obtaining an advisory verdict on "*any* issue"

OPINION AND ORDER                         6

otherwise triable to the court (emphasis added).  Thus, by itself, the court's decision to seek an

advisory verdict on an issue for its decision could not be error; if it were, then Rule 39(c)(1) would

be meaningless and without purpose.  Rather, Rule 39 (c)(1) clearly contemplates that if an advisory

verdict is solicited, a jury will hear evidence unrelated to their primary charge.  Advisory verdicts

in such instances are proper, including in Title VII cases, and courts have relied upon Rule 39(c)(1)

to proceed in precisely this way.  *See, e.g., Sarantis v. ADP, Inc.,* No. CV-06-2153-PHX-LOA, 2008

WL 4057007, at *3 (D. Ariz. Aug. 28, 2008) (trial court sought advisory verdict on back and front

pay in a Title VII case).[2]  To the extent that Kyei's position relies on this theory, that theory is

without support in Rule 39(c)(1) or its purpose.

Turning to the tenet of Kyei's position, that the court committed error by seeking an advisory

verdict because that decision resulted in the presentation of character evidence to the jury (*see* Memo

at 4; Pl.'s Reply in Support of Mo. for New Trial ("Reply") at 2), Kyei's argument does not compel

granting a new trial for at least three reasons.  First, the evidence Kyei challenges as character

evidence was not character evidence.  Kyei claims that the court permitted ODOT "to present

evidence of plaintiff's prior work performance" (Memo at 2), but at no time during trial did the court

permit ODOT to introduce evidence about Kyei's performance, or problems with his performance,

in past jobs.  The exhibits the court admitted pertaining to Kyei's past job with HCSD, Exhibit 210

in redacted form and Exhibit 211, stated only that Kyei's trial-service period with HCSD would not

be extended, and the exhibits cited as the only reason that his background and experience were "not

a good match for the responsibilities of the position".  ODOT's witnesses presented no evidence of

---

[2]  The court cited decisions from the Fifth and Seventh Circuits approving advisory
verdicts in discrimination cases, as well as from another judge in the District of Arizona. *Id.* &
n.3.

his past job performance, nor did the court permit ODOT's counsel to cross-examine Kyei on any problems or issues Kyei had with prior employers. In short, there was no evidence at trial of any specific performance issues, or any reference to performance issues, Kyei experienced at past jobs and no evidence that purported to compare his ODOT performance issues with his performance issues or circumstances at past jobs.

Character evidence is evidence "of a person's character or a trait of character", usually offered for the purpose of proving that the person acted in conformity therewith on a particular occasion. FEDERAL RULE OF EVIDENCE 404(a). This rule prevents a party from making a "general propensity" argument, that if in the past a person engaged in conduct of a certain type, "it follows that he likely committed" the actions presently at issue." 1 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE §100 (1994). Here, none of the evidence Kyei challenges fits Rule 404(a)'s definition because ODOT did not introduce specific evidence of any of Kyei's performance problems at HCSD or Washington County, or with any other prior or subsequent employer. The court's pretrial ruling expressly prohibited ODOT from offering such evidence. Instead, the court limited ODOT to introducing evidence that Kyei's trial-service periods were not extended at two prior employers for the purpose of refuting Kyei's charge that his inability to find a job after his separation from ODOT stemmed only from ODOT's unfavorable references to his prospective employers.

Second, Kyei argues that the evidence the court did allow could have been misused by the jury (Memo at 4), but he does not explain how the jury actually or probably misused this evidence. Kyei does not offer a citation to the record, such as to inconsistent findings in the verdict form or to juror questions that revealed such misuse. Kyei offers no other factual or legal argument to support

OPINION AND ORDER                          8

this contention.  In short, Kyei offers no basis in fact and no legal support for the argument that the jury misused evidence that two prior employers did not extend his trial-service periods, by inferring from that evidence that the specific and repeated performance problems which caused ODOT to terminate him must have occurred because they had occurred with prior employers.

Third, Kyei has not shown that, or even analyzed the question of whether, the court's evidentiary ruling substantially prejudiced him.  At trial, the jury heard considerable evidence of the performance deficiencies upon which ODOT based Kyei's termination.  The evidence phase of trial consumed four court days and during virtually all of that time the parties focused on the numerous specific instances of Kyei's performance at ODOT.  Kyei himself testified for almost two full court days, both on direct and cross-examination.  During his testimony, Kyei related and reiterated to the jury his version of his ODOT job performance, the obstacles his supervisor and the human resources department created to his ability to carry out his job duties, and his description of the unfair treatment to which both his supervisor and ODOT's human resources department subjected him.  In support, Kyei offered the brief testimony of a former ODOT co-worker who witnessed part of one incident the parties disputed, and Kyei called as adverse witnesses his supervisor and the human resources manager involved in his situation.  Against this, ODOT offered a number of witnesses, including Kyei's union representatives and employees of other state and federal agencies with whom Kyei had worked, who testified about the problems they encountered when working with Kyei.  ODOT also presented the testimony of Kyei's supervisor and the human resources manager involved in Kyei's situation regarding Kyei's many performance problems, their oral and written discussions with him about these problems, and their efforts to help him improve his performance.  Furthermore, the two exhibits ODOT introduced regarding Kyei's prior employment were among approximately 200

OPINION AND ORDER                              9

exhibits the parties submitted to the jury.

Kyei's contention that the court's evidentiary ruling substantially prejudiced him has less support in the trial record of this case than did the plaintiff's similar argument in *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507 (D.C. Cir. 1995), which the court of appeals rejected. There, the plaintiff sued her former employer, a law firm, for gender discrimination under Title VII. At trial, the court allowed the defendant to introduce both documentary and testimonial evidence of the plaintiff's performance at another law firm prior to her employment with the defendant. *Id.* at 1508. The defendant had argued that the evidence both impeached the plaintiff's credibility and supported its defense that it fired the plaintiff for legitimate business reasons. *Id.* at 1508-09. The jury returned a verdict for the defendant and the plaintiff appealed, contending that Federal Rule of Evidence 404 barred admission of the prior job performance evidence. *Id.* at 1509.

The court observed that the plaintiff offered three days of testimony concerning her employment and termination at the defendant, including testimony from a former co-counsel in a litigation matter, testimony from the defendant's bookkeeper, plaintiff's own testimony, and hostile testimony from a partner in the defendant law firm. *Id.* Defendant countered with "extensive evidence" of the reasons for plaintiff's dismissal, including the testimony by several partners of plaintiff's habitual inability to meet deadlines and complaints about her poor interpersonal skills. *Id.* at 1509-10. In addition, the defendant offered plaintiff's written performance evaluations from her prior employer, accompanied by corroborating testimony, that the plaintiff had difficulty meeting deadlines and getting along with coworkers during her employment there. *Id.* at 1510.

The court of appeals found that the trial judge abused his discretion in admitting the evidence of the plaintiff's conduct in her prior employment, but it affirmed the jury's verdict because the trial

OPINION AND ORDER                         10

judge's error did not substantially affect the trial's outcome.  The court stated that evidence of prior

acts cannot be introduced to prove that a person acted in conformity therewith on the occasion in

question.  *Id.* at 1511.  Because the trial judge had admitted the evidence to show that the plaintiff

had "the same problem" at a prior firm for which the defendant had fired her, he "admitted the

evidence for the purpose specifically prohibited by Rule 404 – as evidence that [the plaintiff] acted

in conformity with her behavior at [her prior firm] while working for [the defendant]."  *Neuren*, 43

F.3d at 1511.  This, the court of appeals concluded, was error.  *Id.* at 1512.

The court of appeals then addressed the question of "whether the district court's erroneous

admission of the [prior firm] evidence prejudiced the outcome at trial or was harmless error."

*Neuren*, 43 F.3d at 1512, citing FED. R. EVID. 103 ("Error may not be predicated upon a ruling

which admits . . . evidence unless a substantial right of the party is affected.").  The harmless error

test is fact-specific and "depends upon the balance of the evidence bearing upon the issue which the

error arguably affected and the centrality of that issue to the ultimate decision."  *Id.* (citations

omitted).  "The proper inquiry is 'whether the error itself had substantial influence.  If so, or if one

is left in grave doubt, the [verdict] cannot stand.'"  *Id.* (citations omitted).  The court stated that to

decide whether the admission of the prior job performance evidence was harmless error, it would

review the standards for determining whether the plaintiff's termination contravened Title VII and

determine whether the judgment was substantially affected by the prior job performance evidence.

*Neuren*, 43 F.3d at 1512.

After summarizing the burden of proof in a Title VII case, the court of appeals concluded "it

is not clear that [the plaintiff] has met it here."  *Neuren*, 43 F.3d at 1512.  The court noted that

although the plaintiff was "only arguably performing near her employer's legitimate expectations",

OPINION AND ORDER                    11

it would "assume arguendo" that she met her *prima facie* burden. *Id.* at 1512-13. The court

observed that the defendant responded with "substantial evidence" that it terminated the plaintiff's

employment for legitimate reasons: it produced several partner evaluations which contained

expressions of serious concern about the plaintiff's ability to meet deadlines and get along with co-

workers, accompanied by corroborating testimony. *Id.* at 1513. The court then stated that "[w]hen

viewing this evidence separately from the [prior firm] evaluations, we can say with certainty that [the

defendant] met its burden of production to establish a legitimate business justification for [the

plaintiff's] discharge." *Id.* Turning to the plaintiff's evidence of pretext, the court then concluded

that she had failed to show evidence of pretext – some of the evidence she offered was not credible

and other evidence pertained to fellow associates whose circumstances were "entirely different" from

hers. *Id.* at 1513-14. The court concluded:

> While the [prior firm] evidence may have had some effect on the jury's
> weighing of the evidence, we can say with certainty that the [prior firm] evidence did
> not have a substantial impact on the result at trial. Even without consideration of the
> [prior firm] evidence, [the defendant] provided substantial evidence to meet its
> burden of production regarding its legitimate, non-discriminatory reasons for [the
> plaintiff's] dismissal, and [the plaintiff] provided insufficient evidence to meet her
> burden of establishing pretext by a preponderance of the evidence.

*Id.* at 1514-15. Having found the trial court's error harmless, the court of appeals affirmed the trial

court's denial of the plaintiff's motion for new trial.

The record here is less favorable to Kyei than was the record for the plaintiff in *Neuren*. The

evidence of Kyei's performance problems at ODOT was at least as strong as the defendant's

evidence against the plaintiff in *Neuren*, and the prior employment evidence the court admitted here

and which Kyei has challenged involved only two letters that lacked any specifics about his prior job

performance and was unaccompanied by any witness testimony, completely unlike the very specific

OPINION AND ORDER                    12

evidence and corroborating witness testimony admitted in *Neuren*. A key difference between Kyei's situation and the plaintiff's in *Neuren* is that in this case the court excluded from trial evidence of Kyei's specific performance issues with his prior employers. ODOT was not permitted here, as the defendant in *Neuren* was permitted to do against the plaintiff there, to introduce at trial written evaluations and witness testimony regarding Kyei's past performance deficiencies. With no evidence of specific instances of past performance, or even general references to prior performance problems, admitted at trial, Kyei cannot demonstrate that the jury's judgment was substantially affected by the evidence he challenges.

Additionally, Kyei's evidence of discrimination was lacking and decidedly insufficient to overcome the considerable weight of ODOT's evidence that it terminated his employment because of his on-going performance problems. Kyei's case consisted almost exclusively of his own testimony; he offered his accounts of difficulties and confrontations with his supervisor, ODOT's human resources manager, and representatives of other agencies whom he encountered in the course of performing his duties. He presented only one favorable witness to support his testimony, and that witness saw only one of the many incidents Kyei claimed evidenced his supervisor's discriminatory attitude toward him. As to that one incident, Kyei's witness corroborated part of Kyei's description of it and directly contradicted Kyei on other aspects of the incident. The only other witnesses Kyei called were adverse – his supervisor and the ODOT human resource manager – both of whom lent little, if any support, to Kyei's allegations.

In all, ODOT produced thirteen witnesses, including his supervisor and ODOT's human resources manager, who contradicted Kyei's testimony that he was performing his job satisfactorily or refuted his claims that his supervisor and ODOT's human resources manager treated him unfairly.

OPINION AND ORDER                13

These witnesses described Kyei's failure to meet project deadlines; his improper completion or the poor quality of his assignments; his failure or refusal to follows his supervisor's directives for performing various job duties, requesting time off, submitting time sheets, and documenting expenses; and the improper exercise of his authority in working with other agencies, among other issues. Many of the witnesses also described ODOT's attempts to achieve Kyei's recognition of these deficiencies and its efforts to help Kyei improve in these areas. ODOT supplemented this witness testimony with approximately 100 exhibits, the bulk of which contemporaneously chronicled much of these witnesses' testimony, including ODOT's detailed written explanation to Kyei about these performance issues and the need for him to correct them.

In sum, when viewing all the evidence, this court cannot say admission of the challenged evidence substantially prejudiced Kyei or that the court "is left in grave doubt" whether it did. Here, the evidence demonstrated that Kyei probably was not even "only arguably" performing near ODOT's legitimate expectations; thus, his case on this point was no more compelling than that of the plaintiff in *Neuren*, and possibly less so. Furthermore, ODOT produced "extensive evidence" of Kyei's performance problems during his employment, which evidence was at least as compelling, if not more compelling, as that which the defendant in *Neuren* had offered. Balanced against this evidence is Kyei's own evidence, which did not overcome ODOT's legitimate reasons, and the prior employment evidence Kyei challenges, which lacked both the specificity and the quantity present in *Neuren* and which the court of appeals there held did not substantially prejudice the plaintiff. Thus, viewing the trial record separately from the evidence of Kyei's prior employment, the court can say with the same degree of certainty expressed by the *Neuren* court that the challenged evidence did not substantially prejudice Kyei.

OPINION AND ORDER                    14

*Order*

For the reasons explained above, Kyei's motion (#121) for a new trial is DENIED.

Dated this ___2nd___ day of March, 2010.

John V. Acosta
U.S. Magistrate Judge

OPINION AND ORDER                    15